ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 MAR 29 AM 11: 22

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| MICHAEL LUKE, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CV 113-013 |
|  | ) |  |
| RICHMOND COUNTY SHERIFF'S | ) |  |
| DEPARTMENT, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Telfair State Prison ("TSP") in Helena, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983. Because Plaintiff's complaint was filed *in forma pauperis* ("IFP"), it must be screened to protect potential defendants.[1] Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

---

[1] Notably, although Plaintiff initially applied for and was granted permission to proceed IFP (see doc. nos. 2, 6), he later alerted the Court that he in fact wished to pay outright the entire $350.00 filing fee (doc. no. 12). Because Plaintiff did not provide any updated documentation indicating that his prison account contained the requisite amount, the Court declined to authorize the withdrawal of the entire fee from that account, but noted that Plaintiff was welcome to submit the fee separately should he so choose. (See doc. no. 13, p. 1.) Subsequently, Plaintiff submitted the full filing fee.

## I. SCREENING OF COMPLAINT

### A. Background

Plaintiff names the following Defendants in his complaint: (1) the Richmond County Sheriff's Department; (2) Richard Roundtree, the Sheriff of Richmond County; (3) Chester Huffman, whom Plaintiff alleges is a Captain employed by the Richmond County Sheriff's Department; (4) Correct Care Solutions ("CCS"), a company that provides medical care to inmates at the RCJ; (5) FNU Johnson, whom Plaintiff alleges is a Major employed by the Richmond County Sheriff's Department; (6) FNU Rodgers, a doctor whom Plaintiff alleges provides medical care for inmates at the RCJ; and (7) Michelle Terry, whom Plaintiff alleges is the Medical Director for the RCJ. (See doc. no. 1, pp. 1, 3-4.)

Plaintiff asserts that he is suing each Defendant in their individual and official capacities, and additionally states that Defendants Roundtree, Johnson, Huffman, Terry, and Rodgers are responsible for the actions of their subordinates due to their supervisory positions. (Id. at 3.) Plaintiff alleges that, following his arrest on an unspecified date, he was taken to the RCJ and given a medical screen upon his intake there. (Id. at 4.) Plaintiff alleges that, after the medical screen revealed that he had a dislocated fibula, he was accordingly examined by Defendant Rodgers, who stated that Plaintiff needed "outside medical care" that could not be provided at the RCJ. (Id.) Plaintiff next alleges, without further elaboration, that he "was [told] that [an] appointment had been made." (Id.) Plaintiff

2

alleges that, "[until] this date,"[2] he remains at the RCJ, that he has not yet seen a specialist, and that "little [or] no care has been given." (Id.) Additionally, Plaintiff alleges that he and his family have "spoken with all herein named defendants," although he does not provide any details as to any alleged conversations that might have taken place. (Id.) Finally, Plaintiff alleges that Defendants "are also denying [him] any use of a legal library to prepare his case." (Id.)

In his request for relief, Plaintiff notes that he is seeking injunctive, punitive, and monetary relief. (Id.) Specifically, Plaintiff requests that a temporary restraining order be entered ordering the provision of the medical treatment he desires,[3] that he be granted monetary damages for pain and suffering, and that he be allowed to use the law library. (Id.)

**B.     Discussion**

**1.     Failure to State a Claim Against Richmond County Sheriff's Department**

As an initial matter, Plaintiff's allegations are insufficient to state a claim against the Richmond County Sheriff's Department, which is not subject to liability in a § 1983 suit such as this one. According to Fed. R. Civ. P. 17(b)(3), the general rule is that the "capacity to sue or be sued is determined . . . by the law of the state where the court is located. . . . ." Accordingly, in this case, Georgia law controls. The Georgia Supreme Court has explained

---

[2]Presumably, Plaintiff is referring to the date on which his complaint was filed, January 18, 2013. (See doc. no. 1.)

[3]Plaintiff has separately filed a "Motion for [Temporary] Restraining Order" wherein he requests that he be taken to a specialist and granted access to the law library (doc. no. 3), which is addressed in a simultaneously entered Order.

3

that: "[i]n every suit there must be a legal entity as the real plaintiff and the real defendant. This state recognizes only three classes as legal entities, namely: (1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue." Georgia Insurers Insolvency Pool v. Elbert County, 258 Ga. 317, 368 S.E.2d 500, 502 (1988) (quotation omitted). The Court is not aware of any applicable precedent for recognizing a sheriff's department as an entity capable of being sued. However, in a similar vein, the Court is aware that the Eleventh Circuit has ruled that "[s]heriff's departments and police departments are not usually considered legal entities subject to suit. . . ." Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) (dismissing claim against sheriff's department because department was not subject to suit under Alabama law); see also Bunyon v. Burke County, 285 F. Supp. 2d 1310, 1328 (S.D. Ga. 2003) (dismissing claim against police department, reasoning it was not legal entity subject to suit). Thus, Plaintiff fails to state a claim against the Richmond County Sheriff's Department.

## 2. No Claim for Deliberate Indifference to Serious Medical Need

Next, Plaintiff fails to state a claim for deliberate indifference to a serious medical need against Defendants Rodgers, Terry, Roundtree, Johnson, or Huffman. Although it is true that "[t]he Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs," Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999), to support a claim for deliberate indifference to a serious medical need, Plaintiff must meet a two-prong test. First, based on an objective standard, the alleged medical problem must be "sufficiently serious"; second, the defendant must have subjectively acted with "deliberate indifference" to the inmate's

4

health or well-being. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state the proposition differently, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Id. at 835-39; Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010) (noting that the deliberate indifference standard requires a prison official to have disregarded an excessive risk of which he was actually aware).

To show the deliberate indifference that would violate the Eighth Amendment, Plaintiff must allege that prison officials knew about and disregarded an excessive risk to his health or safety. Farmer 511 U.S. at 837. When subjectively weighing whether prison officials are deliberately indifferent, the courts require plaintiffs to show "more than mere negligence," and look for "obduracy and wantonness, not inadvertence or error in good faith." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (citation omitted); see also Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). The Eleventh Circuit has held that to state a viable Eighth Amendment claim, a prisoner must allege that the defendant acted with "deliberate indifference" to his medical needs, such as an intentional refusal to provide care, cursory care in light of a severe medical risk, or a delay in access to care that is essentially a wanton infliction of pain. Adams v. Poag, 61 F.3d 1537, 1543-44 (11th Cir. 1995). Only when medical care is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness'" will the standard of "deliberate indifference" be met. Id. at 1544 (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Allegations of mere negligence or malpractice do not amount to deliberate indifference. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). Additionally, the

5

Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment does not support a claim of deliberate indifference. Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010) (*per curiam*); Adams, 61 F.3d at 1546; Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

Here, Plaintiff has failed to satisfy either prong of the requisite two-prong test to show deliberate indifference on the part of Defendants Rodgers, Terry, Roundtree, Johnson, or Huffman. First, he has not shown that his dislocated fibula is a "sufficiently serious" medical issue that constitutes a serious and imminent risk to his health. In fact, outside of alleging the simple fact of his condition and that Defendant Rodgers told him that treatment of that condition would require "outside medical care," Plaintiff has not provided any information concerning the condition. (See doc. no. 1, p. 4.) He does not, for instance, allege that the dislocation of his fibula has resulted in his being subjected to any sort of immediate or serious medical need – or that he was told that such was the case by Defendant Rodgers – nor does he even provide any indication as to the sort of pain or injury he has allegedly suffered.[4] In fact, Plaintiff has not indicated how he has been in any way harmed as a result of his condition, much less shown that any such harm has approached the level of a serious, imminent, or excessive risk to his health. Without considerably more, Plaintiff's bare allegation that his fibula is dislocated is plainly insufficient to satisfy the first prong of the

---

[4]Notably, Plaintiff does seek compensatory damages for pain and suffering and asserts that he has been "made to suffer both physically and mentally," but nowhere outside of those general references does he make any attempt to explain the nature or extent of the pain or suffering to which he has allegedly been subjected. (Doc. no. 1, p. 4.)

6

test. Farmer, 511 U.S. at 834; Thomas, 614 F.3d at 1304.

Even if Plaintiff *had* satisfied the first prong and thereby established that his medical issue was sufficiently serious – which, again, he has not – he has also failed to satisfy the second prong. Essentially, Plaintiff has not alleged facts indicating that any Defendants acted with conscious disregard to a serious medical need, presuming only for the sake of analysis that such a need exists. In fact, as to Defendant Rodgers, Plaintiff alleges that he was examined by Defendant Rodgers immediately upon his intake at the RCJ, and that some sort of subsequent appointment was made to address his fibula. (Doc. no. 1, p. 4.) Notably, Plaintiff does not specify the date on which he was arrested, the date he was booked into the RCJ, or the date of his examination by Defendant Rodgers (see id. at 4), rendering it impossible to determine the length of any alleged delay in treatment. Regardless, to the extent that Plaintiff asserts that his appointment with an outside specialist should take place earlier than the date for which it was scheduled, that belief evinces only the sort of mere disagreement with Defendant Rodgers's medical opinion regarding the appropriate course of treatment that is insufficient to establish deliberate indifference.[5] Smith, 375 F. App'x at 910.

Next, to the extent that Plaintiff attempts to assert claims of deliberate indifference against Defendants Terry, Roundtree, Johnson, and Huffman in their individual capacities,[6]

---

[5]The foregoing statement is especially true in light of the Court's finding that Plaintiff has not demonstrated that he has a serious medical need.

[6]Alternatively, to the extent that Plaintiff attempts to hold those Defendants liable for the actions of their subordinates, he is barred from doing so by the doctrine of *respondeat superior*, as explained infra Part I.B.4.

7

Plaintiff also fails to satisfy the second prong with respect to those Defendants. The entirety of Plaintiff's allegations against those Defendants is that he, "as well as [his] family," spoke to each of them (doc. no. 1, p. 4), but he does not explain the nature of any alleged conversation that might have taken place, nor does he explain how the supposed knowledge of those Defendants as to his medical request is demonstrative of deliberate indifference where Plaintiff had already been examined by Defendant Rodgers and scheduled for an outside appointment to address his condition. In other words, Plaintiff has not shown that those Defendants disregarded an excessive risk to Plaintiff's health of which they were actually aware. Thomas, 614 F.3d at 1304.

In short, Plaintiff has failed to satisfy either prong of the requisite test to establish a viable claim for deliberate indifference, and he therefore fails to state such a claim against Defendants Rodgers, Terry, Roundtree, Johnson, or Huffman.

### 3. No § 1983 Claim Based on Access to Law Library

Next, Plaintiff has failed to state a viable claim based on his allegation that he is being denied sufficient access to a law library to prepare his case. (Doc. no. 1, p. 6.) To state a viable denial of access to the courts claim, a plaintiff must allege actual injury to existing or contemplated litigation or nonfrivolous (and therefore viable) claims challenging Plaintiff's sentence or conditions of confinement. Lewis v. Casey, 518 U.S. 343, 349-55 (1996); see also Wilson v. Blankenship, 163 F.3d 1284, 1291 (11th Cir. 1998) (emphasizing that an inmate's right to access the courts is only implicated where there is actual injury suffered "in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement"). The Eleventh Circuit has

8

clarified the requirements for pursuing a denial of access to the courts claim as follows:

> [A] plaintiff first must show actual injury before seeking relief . . . . This essential standing requirement means that [a defendant's] actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action. To prevail, a plaintiff must provide evidence of [] deterrence, such as denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of [a defendant].

Blankenship, 163 F.3d at 1290-91(citations omitted). Stated otherwise, there must be an allegation that the actions of a defendant acting under the color of state law "hindered . . . 'efforts to proceed with a legal claim in a criminal appeal, post conviction matter, or civil rights action seeking to vindicate basic constitutional rights.'" Id. at 1291 (quoting Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (*per curiam*)).

Here, Plaintiff alleges simply that "Defendants are also [denying him] any use of a legal library to prepare his case." (Doc. no. 1, p. 4.) This bare allegation is plainly inadequate to state a viable access to the courts claim, as Plaintiff fails to specify any actual injury to a nonfrivolous legal action (including the instant case) caused by Defendants. As noted above, the Court liberally construes claims presented by *pro se* litigants, Haines, 404 U.S. at 520-21, and, having done so here, the Court has determined that Plaintiff has failed to present any viable claims against the named Defendants. Importantly, there is no indication that any amount of legal research on Plaintiff's part would have somehow changed that determination. Similarly, because the Court is recommending the dismissal of Plaintiff's complaint, his argument that he needs increased access to a legal library to "prepare his case" is without merit. Moreover, even if Plaintiff *had* specified an actual injury to a nonfrivolous legal action, he has failed to assert that any Defendant in particular is responsible for the

allegedly restricted access and, as explained infra, he cannot hold Defendants Rodgers, Terry, Roundtree, Johnson, Huffman, and CCS responsible for the actions of their subordinates and employees. Therefore, Plaintiff fails to state a viable claim for denial of his right to access the courts.

### 4. No Supervisory Liability

To the extent that Plaintiff attempts to hold Defendants Terry, Roundtree, Johnson, Huffman, and CCS responsible for the actions of their subordinates or employees, those attempted claims fail as well. First, Plaintiff does not mention Defendants Terry, Roundtree, Johnson, Huffman, and CCS in his complaint aside from naming them in the caption of the complaint, explicitly asserting that they are each responsible for the actions of their subordinates or employees, and alleging that, in the case of Defendants Terry, Roundtree, Johnson, and Huffman, they should be held liable based on unexplained conversations that Plaintiff and his family members allegedly had with each of them, which, as discussed above, fails as a claim.[7] (Id. at 1, 3-4.) However, "[s]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). The Eleventh Circuit has held that a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the

---

[7]As noted above, Plaintiff also vaguely asserts that Defendants are generally responsible for denying him access to the law library (doc. no. 1, p. 4), but he fails to specify which Defendants have actually denied him access or how they might have actually done so. Regardless, as also explained above, Plaintiff's allegations concerning denial of access to the law library fails to state a viable claim.

10

purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")). Thus, in the absence of an allegation of any connection between actions of Defendants Terry, Roundtree, Johnson, Huffman, and CCS and an alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against those Defendants. Those Defendants are thus subject to dismissal on that basis alone.

Moreover, Plaintiff's claims against Defendants Terry, Roundtree, Johnson, Huffman, and CCS are also inadequate to the extent that Plaintiff is attempting to hold them responsible for the actions of Defendant Rodgers, against whom Plaintiff directs allegations of deliberate indifference.[8] "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). Likewise, supervisors and private contractors[9] cannot be sued under § 1983 simply on a theory of

---

[8]As explained above, Plaintiff has failed to state a viable claim for deliberate indifference against *any* Defendant, and there is thus no underlying claim for which Defendants Terry, Roundtree, Johnson, Huffman, and CCS could be held responsible based on supervisory liability even if Plaintiff's claims against them were *not* barred.

[9]Of course, private contractors that provide healthcare for prisons, like CCS, do act under color of state law for purposes of § 1983 liability. Farrow v. West, 320 F.3d 1235, 1239 n.3 (11th Cir. 2003). Nevertheless, as explained herein, the principle that *respondeat superior* is not a cognizable theory of liability under § 1983 holds true regardless of whether the entity sued is a state, municipal, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129-30 (11th Cir. 1992).

11

*respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that [supervisor] which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory). To hold a supervisory official liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

As noted above, the only mention of Defendants Terry, Roundtree, Johnson, Huffman, and CCS is in the caption of Plaintiff's complaint, to assert their liability based on the actions of their subordinates or employees, and to allege that they spoke with Plaintiff or his family members at some point; nowhere outside of his conclusory allegations that those conversations somehow resulted in deliberate indifference does Plaintiff assert that those Defendants actually participated in any purported constitutional violation. Similarly, Plaintiff fails to allege a "causal connection" between Defendants Terry, Roundtree, Johnson, Huffman, and CCS and the asserted constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[10] puts the responsible supervisor [or employer] on notice of the need to

---

[10]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has not made the necessary showing with respect to Defendants Terry, Roundtree, Johnson, Huffman, and CCS.

In sum, Plaintiff has failed to state a claim upon which relief may be granted based on supervisory liability against Defendants Terry, Roundtree, Johnson, Huffman, and CCS.

### 5. No Official Capacity Claims

As noted above, Plaintiff is attempting to proceed against Defendants in both their individual and official capacities. (See doc. no. 1, p. 4.) Moreover, in his demand for relief, Plaintiff seeks an award of monetary damages against each Defendant. (Id.) Notably, however, the Eleventh Amendment bars official capacity claims against state prison officials for money damages. Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims for monetary relief fail as a matter of law, and they should be dismissed from this case.

## II. MOTION FOR TEMPORARY RESTRAINING ORDER

The Court will also take this opportunity to address Plaintiff's motion for a temporary restraining order. (Doc. no. 3.) Notably, a temporary restraining order is usually sought "to preserve the status quo until the Court can conduct a thorough inquiry into the propriety of

13

a preliminary or permanent injunction," Hospital Resource Personnel, Inc. v. United States, 860 F. Supp. 1554, 1556 (S.D. Ga. 1994) (Bowen, J.), but it is clear that Plaintiff does not seek to preserve the status quo. That being the case, the Court has evaluated Plaintiff's request under the well-known standards generally applicable to both temporary restraining orders and preliminary injunctive relief. Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D. Pa. 1994) ("The standards for a temporary restraining order are the same as those for a preliminary injunction." (citation omitted)).

In his motion, Plaintiff asserts the same alleged facts that are the subject of his complaint, but recasts them as a request for immediate relief. (Compare doc. no. 3, pp. 1-2, with doc. no. 1, p. 4.) More specifically, Plaintiff asserts, as in his complaint, that he needs "a specialist['s] care and surgical correction" to address a medical issue with his fibula. (Doc. no. 3, p. 1.) In connection to that assertion, Plaintiff further states that he "may suffer irreparable damage, and/or more pain and suffering, at the hands of the defendants" if he is not provided with the requested treatment. (Id.) Additionally, Plaintiff asserts that he is generally being denied "access to the courts," and requests that Defendants "provide him with [an adequate] law library with [adequate] time to research and prepare his case." (Id. at 1-2.)

A party moving for injunctive relief must show the following: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306

(11th Cir. 1998) (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." All Care Nursing Serv., Inc., 887 F.2d at 1537 (citing United States v. Jefferson County, 720 F.2d. 1511, 1519 (11th Cir. 1988)).

Here, Plaintiff has only addressed one of the four requirements in relation to his request to see a specialist -- the requirement that he make a showing of irreparable injury -- and has not addressed any of the four requirements in relation to his request concerning access to a law library. First, Plaintiff has offered nothing to suggest a likelihood of success on the merits of his claims, which concern the same subject matter as the requests in his motion for injunctive relief, especially in light of the Court's recommendation above that those claims be dismissed. Additionally, although he has vaguely addressed the second prong in relation his request to see a specialist, Plaintiff has failed to establish that there is a substantial threat that he will suffer irreparable injury if the injunction is not granted. In order to satisfy the irreparable injury requirement, Plaintiff must show that the threat of injury is "neither remote nor speculative, but actual and imminent." Northeastern Fla. Chapter of Ass'n of General Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 973 (2d Cir. 1989)); see also Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994) (noting that, in order to obtain injunctive relief, a plaintiff must show "a real and immediate – as opposed to a merely conjectural or hypothetical – threat of *future* injury."). Here, as to his request to see a specialist, Plaintiff has only asserted that he *may* suffer

"irreparable damage" in the event that injunctive relief as to that request is not granted, and he makes absolutely no effort to explain what sort of injury he anticipates possibly sustaining. (Doc. no. 3, p. 1.) As to his request for injunctive relief concerning access to the courts, Plaintiff has not identified any injury, imminent or otherwise, that he is likely to sustain if he is not granted the degree of access to legal materials that he seeks. (Id. at 1-2.)

As for the final two elements of the preliminary injunction inquiry, Plaintiff has offered nothing to suggest that any threatened injury to the movant outweighs the damage the proposed injunction may cause the opposing party or that the proposed injunction would not be adverse to the public interest. He has therefore failed to satisfy these elements, especially since federal courts should refrain from unwarranted interference in the day-to-day operations of state prisons. See Prieser v. Rodriguez, 411 U.S. 475, 491-92 (1973). In sum, Plaintiff has not satisfied the requisite elements for a preliminary injunction, and his motion for injunctive relief should be therefore **DENIED**.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief can be granted, that his motion for a temporary restraining order be **DENIED** (doc. no. 3), and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 29th day of March, 2013, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE